**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

BRANDON ROBERTS,                          *

Plaintiff,                                *

v.                                        *          Civil Action No. ELH-20-2791

THOMAS SIRES, *Captain*, *et al.*,        *

Defendants.                               *
                                       ***

**MEMORANDUM OPINION**

Brandon Roberts, who is self-represented, is a prisoner at the North Branch Correctional Institution ("NBCI").  On September 25, 2020, he initiated a civil rights action against multiple defendants, pursuant to 42 U.S.C. §1983.  ECF 1.  The Complaint was subsequently supplemented with a verified submission.  *See* ECF 4 (Supplement).  I shall consider ECF 1 and ECF 4 collectively as the Complaint.

By Memorandum (ECF 8) and Order (ECF 9) of May 31, 2022, I dismissed the claims against defendants Jeffrey Nines and William Boher, along with the claim concerning confiscation of personal property.  But, I directed that claims may proceed against defendant Captain Thomas Sires, for retaliation, and as to the following defendants for claims of irregularities in the disciplinary process:  Hearing Officer Anthony Brent, Warden Frank Bishop, and Shift Commander Jack Johns.[1]

On December 30, 2022, defendants Sires, Bishop, Nines, Boher, Johns, and Brent moved to dismiss or, in the alternative, for summary judgment (ECF 22), supported by a memorandum

---

[1] Roberts filed an interlocutory appeal as to ECF 8 and ECF 9.  *See* ECF 11.  The Fourth Circuit dismissed the appeal on May 1, 2023.  *See* ECF 29; ECF 29-1; ECF 32.

(ECF 22-1) (collectively, the "Motion").[2]  The Motion is also supported by several exhibits, including the declarations of Robin Wolford, Deputy Director of the Inmate Grievance Office ("IGO") (ECF 22-2) and John White, Correctional Case Management Specialist II at NBCI (ECF 22-4).  Woolford included an exhibit with his Affidavit.  ECF 22-3.  And, White also submitted an exhibit.  ECF 22-5.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on January 3, 2023, the Court informed Roberts of his right to respond to the Motion, and that the failure to file a response in opposition to the Motion could result in dismissal of his Complaint.  ECF 23, 24.  On January 27, 2023, the Court received Roberts's request for an extension of time to respond to the Motion.  ECF 25.  The Court granted Roberts's extension motion on March 24, 2023, and set a response date of May 1, 2023.  ECF 28.[3]

On May 2, 2023, Roberts advised that he would be filing his opposition "5-7 days" late, and was awaiting certain documents as to the matter of exhaustion.  ECF 30.  Then on May 12, 2023, Roberts advised that he had been relocated to a new building, had some medical issues, and was still waiting for certain documents.  ECF 31.  And, on May 24, 2023, Roberts wrote to advise that his memorandum "is being forwarded under separate cover . . . ."  ECF 33.  No opposition has been received, however.

The Motion is ripe for disposition. Upon review of the record, exhibits, and the applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6. (D. Md. 2021).

---

[2] It is unclear why defendants Nines and Boher joined the Motion, given that the Court dismissed them from the case.

[3] In a Memorandum and Order of March 24, 2023 (ECF 27, ECF 28), the Court also denied plaintiff's motion for discovery. *See* ECF 26.

For reasons that follow, I shall construe the Motion as one for summary judgment and grant it in favor of defendants.

## I. Factual Background

A. Roberts's Claims

Roberts's allegations stem from a memorandum issued on an unspecified date by defendant Sires, who was a Lieutenant at NBCI at the time relevant to the Complaint.  ECF 4 at 2.  The memorandum banned inmates from possessing stainless steel watches or watches containing metal faces, backs, or bands.  *Id.*

On April 11, 2017, Sires came to Roberts's housing unit to collect watches, although the memorandum gave prisoners up to and including April 14, 2017, to comply with the new policy.  *Id.* at 3.  Roberts states that the collection of the watches was "retaliatory" and "carried out to deter & silence Roberts, by taking away his watch, as soon as possible, despite the grace period."  ECF 4 at 3.  At the time, Roberts was wearing his watch, and was escorted to segregated housing, as he "refused to sign any agreement to surrender his watch at a depreciation rate which valued [it] at zero."  *Id.*  Eventually, an agreement was reached between Roberts and another officer to preserve the watch "pending the outcome of any court proceedings the plaintiff may file regarding the matter."  *Id.*  According to Roberts, Sires was "upset with the agreement and retaliated, by falsifying a disciplinary report claiming he was threatened" by Roberts.  *Id.*

On an unspecified date, Roberts filed an "ARP/Grievance" challenging Sires's authority to force him to give up his watch.  ECF 4 at 2.

Defendant Shift Commander Jack Johns was responsible for investigating the misbehavior report and examining the evidence, but allegedly he failed to do so.  *Id.* at 5.  Jones authorized Roberts's detention in disciplinary segregation.  *Id.*

The disciplinary hearing took place on May 2, 2017.  *Id.* at 3.  Roberts presented a witness and also requested video surveillance that was then reviewed.  *Id.* at 4.  According to Roberts, Hearing Officer Brent "disregarded the facts" and found Roberts guilty of using "[c]oercive, intimidating or threating language" and "disobeying an order."  *Id.*  Further, plaintiff claims that Brent "maliciously and inappropriately altered the plaintiff's statements made in his defense during the hearing" and made a finding of guilt based on "insufficient evidence."  *Id.*

Brent imposed 120 days of segregation and 90 days loss of good time credit upon Roberts. *Id.* Roberts appealed the disposition to the warden.  *Id.* Plaintiff claims that Warden Bishop failed to review the video surveillance or any evidence, and unlawfully modified the sanctions to impose an additional 30 days of cell restriction "to run concurrent."  *Id.*  Bishop used a matrix system that enhances the sanction based on an individual's disciplinary history.  *Id.* at 4-5.

B.  Defendants' Motion

With their Motion, defendants submitted the Declaration of Robin Woolford, Deputy Director of the Inmate Grievance Office of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), dated December 29, 2022.  ECF 22-2.  Woolford avers that her records indicate that Roberts filed a "grievance" with the IGO, complaining that his wristwatch was improperly confiscated, but failed to exhaust his administrative remedies prior to doing so.  *Id.* at 1.  She avers that Roberts did not submit with his grievance all necessary Administrative Remedy Procedure ("ARP") paperwork, even after being provided with an opportunity to do so.  *Id.* at 2. Woolford submitted a copy of the IGO's case tracking report.  It indicates that the grievance was filed on May 25, 2017, and dismissed on October 23, 2017. ECF 22-3.

Defendants also submitted the Declaration of John White, Correctional Case Management Specialist II at NBCI, pertaining to Roberts's disciplinary hearing.  ECF 22-4. White provided the Notice of Inmate Rule Violation ("Notice") issued to Roberts on April 11, 2017, which charged Roberts with violations of Rule 104 (using intimidating or coercive language); Rule 312 (interfering with or resisting the performance of staff duties); and Rule 400 (disobeying an order).  ECF 22-5 at 2. The Notice was prepared by Sires and reviewed by Defendant Johns, who recommended a formal hearing on the charges and assignment to administrative segregation pending a formal hearing.  *Id.*  The Notice advises Roberts that he may call a witness or witnesses and offer evidence at his hearing.  *Id.* at 3.  The form is completed and signed by Roberts on April 11, 2017, and states that he requested witness Samuel Queen and Video Camera Unit 3B.  *Id.*

White also provides the Inmate Hearing Record for the hearing of May 2, 2017.  ECF 22-6.  The Record notes that inmate Queen testified as a witness, and the video was reviewed. *Id.* at 5.  Defendant Brent found Roberts guilty of violating Rule 104 and Rule 400, but not guilty of violating Rule 312.  *Id.* at 6-7.   The Record also notes Roberts to have a poor adjustment history, and that he was given a disposition of 120 days of segregation and 90 days of loss of good time credit.  *Id.* at 6.

## II.    Standards of Review

### A.

Roberts is self-represented. Therefore, his submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); see Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims

of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).

## B.

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports*

*Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  But, this discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (4th

Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

The Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit.'" *Harrods*, 302 F.3d at 244 (internal citation omitted).  Nevertheless, the Court has "not always insisted" on a Rule 56(d) affidavit. *Id.*  Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

On the other hand, "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of [Rule 56(d)] to set out reasons for the need for discovery in an affidavit." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (citing *Hayes v. N. State L. Enf't Officers Ass'n*, 10 F.3d 207, 215 (4th

Cir. 1993)); *see also Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 n.3 (4th Cir. 1990) ("[I]f plaintiffs genuinely were concerned that defendant's motion was premature, plaintiffs should have sought relief under Fed. R. Civ. P. 56[(d)].").

As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray*, 741 F.3d at 483; *accord Putney*, 656 F. App'x at 639. And, the Fourth Circuit recently reaffirmed this principle when it concluded that a district court abused its discretion by granting summary judgment before discovery, even though the plaintiff failed to comply with Rule 56(d), because "the district court was on fair notice of potential disputes as to the sufficiency of the summary judgment record." *Shaw*, 59 F.4th at 129. In *Shaw*, much of the evidence the plaintiff needed involved the subjective knowledge of the prison officials or was in their exclusive control. *Id.*; *see also Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021).

Here, Roberts filed a Motion for Discovery (ECF 26), with a corresponding affidavit (ECF 25-1), which I denied. ECF 27, 28. In particular, Roberts sought (1) a copy of the "teleconference/audio recording disc of the disciplinary hearing for (May 5, 2017); related to the incident in question" because this will "prove that the guilty finding was not based on any evidence, but solely on an inappropriate manipulation of [his] defenses at the disciplinary hearing" (ECF 25-1 at 1); (2) that the court review the April 11, 2017 video surveillance footage for the 3-B housing unit for the hours of 12:00 p.m. through 2:00 p.m. because this will prove that the defendants came straight to cell 28, where he was housed, and when he was told to step out of the cell he was "arbitrarily cuffed up" and escorted to segregation and "no words were exchanged between" him and the defendants (*id.);* and (3) a copy of "the regulations pertaining to the duties of the shift commander as it relates to investigations during the processing of disciplinary tickets"

because this will "determine how and why [he] was recommended to be placed in segregation." *Id.* at 2.

In denying the discovery motion, I noted that defendants provided both the Notice of the rule violations and the hearing record with their motion.  ECF 27 at 4.   Further, Roberts failed to state what took place at the hearing that would be heard on an audio tape yet not documented in the written record, and that he offered only a conclusory statement that his defenses were manipulated.  *Id.*  I also noted that at the hearing a witness he requested was present and testified, and that the video surveillance footage he requested was provided and reviewed.  *Id.* at 5.  Further, Roberts was present both during the incident with the watch, and also at his hearing, and what took place is within his personal knowledge.  *Id.*  Indeed, testimony based on personal knowledge or firsthand experience can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving.  *Lovett v. Cracker Barrel Old Country Store, Inc*., 700 Fed. App'x 209, 212 (4th Cir. 2017).

I also found that the regulations Roberts sought pertaining to the shift commander's duties were not necessary or relevant to contest defendants' assertion that Roberts was not engaged in protected First Amendment activity when he was placed in segregation and that there was no causal relationship with any adverse effects. ECF 27 at 5.  Compare *Brooks v. Johnson*, 924 F.3d 104, 110 (4th Cir. 2019).

Accordingly, I am satisfied that it is appropriate to address the Motion as a motion for summary judgment, as this will facilitate resolution of this case.

### C.

Summary judgment is governed by Fed. R. Civ. P. 56(a).  It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248; *see Tom v. Hospitality Ventures, LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020).  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 522 (quoting former Fed. R. Civ. P.

56(e)). Moreover, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

Thus, the trial court may not make credibility determinations on summary judgment. *Kellen v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat

summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc*., 370 F.3d 423, 433 (4th Cir. 2004)).   Moreover, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *see also, e.g.*, *Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co*., 499 Fed. App'x 285, 294 (4th Cir. 2012).   And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Moreover, testimony based on personal knowledge can give rise to a dispute of material facts.   *Lovett*, 700 Fed. App'x at 212.   Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'"   *Cowgill v. First Data Technologies, Inc.*, 41 F. 4th 370, 383 n.8 (4th Cir. 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

In sum, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact.   *See Anderson*, 477 U.S. at 247-48.   If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment.   *Id.* at 248; *see Judd*, 718 F.3d at 313.   On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."   *Anderson*, 477 U.S. at 252.

### III. Discussion

Roberts alleges that his due process rights were violated during the disciplinary process, and that he was subjected to retaliation for filing a grievance and other related activity.   Defendants assert that (1) Roberts has failed to exhaust administrative remedies; (2) Roberts's claims are

barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) Roberts fails to state a claim for relief for denial of due process or retaliation; and (4) they are entitled to qualified immunity.

### A. Exhaustion

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 91 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 637. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 635-36. And, "an administrative remedy is

not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

In Maryland, there is an established administrative remedy procedure that applies to all Maryland prisons. *See generally* Md. Code (2017 Repl. Vol.), §§ 10-201 *et seq.* of the Correctional Services Article ("C.S."); Code of Maryland Regulations ("COMAR") 12.07.01B(1) (defining ARP). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee. C.S. § 10-206(a).

When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. Further, if the prison has a grievance

procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO.  *See* C.S. § 10-206(b).

The ARP process consists of multiple steps.  For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[4] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).

Exhaustion of administrative remedies for disciplinary proceedings follows a slightly different route. After receiving a hearing disposition, the inmate must file a written appeal with

---

[4] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

the "managing official" of the facility challenging sufficiency of the evidence; interpretation of the law, rules, policy, procedures, or regulations applicable to the disciplinary process; or the sanction imposed.  COMAR 12.03.01.30(A).  If the relief sought is not provided, the prisoner must then file an appeal to the IGO, as set forth in COMAR 12.07.01.05 (governing time limits) and 12.07.01.08 (Standards of Review).  The appeal to the IGO must be filed within 30 days of the date that either the inmate received the warden's final response to the appeal, or the date the warden's response was due.  COMAR 12.07.01.05(C).

If a grievance filed with the IGO is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing. . . ."  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code § 10-206(a)(1) of the State Government Article.

A decision of the administrative law judge denying all relief to an inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).  However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)(2),(c); COMAR 12.07.01.10(B).

The statute provides for judicial review.  C.S. § 10-210.  But, "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the

Office of Administrative Hearings unless the individual has exhausted the remedies provided" in Title 10, Subtitle 2 of the Correctional Services Article. C.S. § 10-210(a).

Roberts alleges that he filed a "ARP/Grievance challenging [Capt. Sires's] authority to seize or force [plaintiff] to give up his watch." ECF 4 at 2. Roberts also states that, upon the conclusion of the disciplinary proceeding, he appealed the decision to the Warden. *Id.* at 4.

Defendants assert that Roberts failed to exhaust his administrative remedies. ECF 22-1 at 6-8. They provide the Declaration of Robin Woolford, Deputy Director of the IGO, as well as a copy of the IGO's case tracking report indicating that a grievance was filed on May 25, 2017, and dismissed on October 23, 2017. ECF 22-2, ECF 22-3.

Woolford references only the one ARP, which was appealed to the IGO. ECF 22-2 at 1. She provides the ARP number and describes the ARP as a complaint from Roberts "that his wristwatch was improperly confiscated." *Id.* Defendants do not provide any paperwork related to this one ARP, or grievance, other than the case tracking report. ECF 22-3 at 2. The case tracking report states the grievance pertained to "[p]roperty – allowable watches." *Id.*

Notably, Woolford does not state if Roberts filed any other ARPs or grievances during the relevant time period. Woolford does not present information pertaining to whether Roberts exhausted his claims related to the disciplinary proceeding, or retaliation by defendant Sires.

The burden of proof is on the defendants to establish that Roberts failed to exhaust his administrative remedies on pending claims. *See Bock*, 549 U.S. at 215-216; *Anderson*, 407 F.2d at 682. At most, defendants have asserted that Roberts failed to exhaust his administrative remedies regarding the confiscation of his watch. This is a claim that the court previously dismissed by Memorandum (ECF 8) and Order (ECF 9) on May 31, 2022. Defendants have not met their initial burden of demonstrating the absence of a genuine issue of material fact as to

whether Roberts exhausted his administrative remedies.  *See Bouchart*, 346 F.3d at 525 (citing *Celotex Corp.*, 477 U.S. at 323).

Therefore, I shall deny defendants' motion for summary judgment based on Roberts's failure to exhaust.

### B.  *Heck v. Humphrey*, 512 U.S. 477 (1994)

Defendants also assert that Roberts's Complaint is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).  ECF 22-1 at 8-10.  This argument is relevant only to Roberts's claims regarding the disciplinary hearing.

At plaintiff's disciplinary hearing, he received 120 days of segregation and 90 days loss of good time credit.  ECF 4 at 4; ECF 22-6 at 7.  Roberts states that he appealed the disposition, and provides a conclusory statement that defendant Bishop failed to review the video surveillance or any evidence, and then unlawfully modified the sanctions to impose an additional 30 days of cell restriction "to run concurrent." ECF 4 at 4.  Roberts challenges both the cell restriction and loss of good time credit, asserting that he was denied due process in the disciplinary proceedings.  ECF 4.  He asks the Court to find that he was denied due process, and to order the dismissal and expungement of the disciplinary charges.  *Id.* at 8.  Roberts also seeks damages for his "unlawful confinement." *Id.*

If the Court issues an order finding that Roberts was denied due process, and orders that the hearing charges be dismissed and expunged, Roberts's good time credit will be restored, and this will potentially impact the time to be served on his underlying criminal conviction.  This result, as discussed below, cannot be obtained in a §1983 action because habeas corpus is the sole avenue for challenging duration of confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).

In *Moskos v. Hardee*, 24 F.4th 289 (4th Cir. 2022), the Fourth Circuit dismissed a similar due process challenge lodged by a prisoner as to a disciplinary proceeding, which resulted in the loss of good time credits. The Court summarized the case law as follows, *id.* at 295:

> The Supreme Court has long held that "habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement" and that this "specific determination must override the general terms of § 1983." *Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "It would wholly frustrate explicit congressional intent" if petitioners could avoid the requirements for habeas relief "by the simple expedient of putting a different label on their pleadings." *Id.* at 489–90, 93 S.Ct. 1827. This principle applies just as clearly to prison disciplinary convictions resulting in the loss of good-time credits as it does to other convictions, since the restoration of good-time credits is "within the core of habeas corpus in attacking the very duration of [the prisoner's] physical confinement itself." *Id.* at 487–88, 93 S.Ct. 1827.
>
> It has long been settled law, therefore, that a plaintiff may not challenge the validity of a disciplinary conviction through a damages suit under § 1983. In particular, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). If so, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated," whether on direct appeal, by executive order, by a state tribunal, or by a federal court's issuance of a writ of habeas corpus. *Id.*
>
> In *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court made clear that this rule applies not merely to substantive challenges to convictions, but also to those challenges to internal prison procedures that would be "such as necessarily to imply the invalidity of the judgment." *Id.* at 645, 117 S.Ct. 1584. The prisoner there alleged that a hearing officer "concealed exculpatory witness statements and refused to ask specified questions of requested witnesses." *Id.* at 644, 117 S.Ct. 1584. As a result, he alleged that he was deprived of the chance to present exculpatory evidence and wrongfully deprived of good-time credits. *See id.* at 646–47, 117 S.Ct. 1584. The Court held that this sort of damages claim, "based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed," was not cognizable under § 1983. *Id.* at 648, 117 S.Ct. 1584. And *Balisok* was emphatic as to how the courts should handle such claims: "[A] claim is either cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Id.* at 649, 117 S.Ct. 1584.

For the same reasons that the Court articulated in *Moskos*, Roberts may not pursue his due process claims here because they call his disciplinary conviction into question, and he has not shown that the conviction has been reversed or overturned.

I shall grant defendants' motion for summary judgment pertaining to Roberts's due process disciplinary claims.

## C. Retaliation

Roberts appears to make various claims of retaliation by Sires stemming from the memorandum that Sires issued that banned inmates from possessing stainless steel watches or watches containing metal faces, backs, or bands.  ECF 4 at 2.  Sires asserts that Roberts has failed adequately to allege retaliation under the First Amendment.  ECF 22-1 at 12-14.

Plaintiff states that after the issuance of Sires's memo, he filed an "ARP/Grievance" challenging Sires's authority to force him to give up his watch.  ECF 4 at 2.  He does not provide the date that the memorandum was issued, or the date that he filed the ARP/Grievance.

On April 11, 2017, Sires came to Roberts's housing unit to collect watches, although Sires's memorandum gave prisoners up to and including April 14, 2017, to comply with the new policy.  ECF 4 at 3.  Roberts claims that Sires's action to collect his watch was "retaliatory" and "carried out to deter & silence Roberts, by taking away his watch, as soon as possible, despite the grace period."  *Id.*; *id.* at 6.

Roberts alleges further retaliatory conduct. He states that when Sires attempted to collect his watch, he was wearing it, and he was escorted to segregated housing, as he "refused to sign any agreement to surrender his watch at a depreciation rate which valued [it] at zero."  *Id.* at 3. Eventually, an agreement was reached between Roberts and another officer to preserve the watch "pending the outcome of any court proceedings the plaintiff may file regarding the matter."  *Id.*

24

Roberts asserts that Sires was "upset with the agreement" and retaliated by filing a false misbehavior report claiming that Roberts had threatened him. *Id.* Roberts states that he was further retaliated against by Sires when he was put in segregation for challenging Sires's authority to confiscate and place a ban on his watch. *Id.* at 6.

To state a claim of retaliation for exercising a First Amendment right, a plaintiff must allege that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023); *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017); *Constantine v Rectors & Visitors of George Mason Univ.*, 411 F.3d 479, 499 (4th Cir. 2005).

In assessing a First Amendment claim of retaliation, the question, "from an objective standpoint," is "whether the challenged conduct would 'likely deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Snoeyenbos v. Curtis*, 60 F.4th 723, 731 (4th Cir. 2023) (quoting *Constantine*, 411 F.3d at 500). And, "the challenged conduct" must "generate more than a de minimis inconvenience. *Curtis*, 60 F.4th at 730. Moreover, the Fourth Circuit has said: "'An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.'" *Martin v. Duffy*, 977 F. 3d 294, 304 (4th Cir. 2020) (citation omitted) (brackets in *Martin*).

Notably, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). But, "incarceration does not divest prisoners of all constitutional protections." *Id.* at 228. "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v.*

*Procunier*, 417 U.S. 817, 822 (1974). Although prisoners retain First Amendment rights, those rights are not unlimited and may be curtailed by prison officials under appropriate circumstances. *Jones v. N.C. Prisoner's Labor Union, Inc.*, 433 U.S. 119, 125 (1977) (upholding prison regulations limiting prisoner's speech regarding the operation of a prisoner union).

In the prison context, courts "treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)); *Martin,* 977 F.3d at 306 (courts view claims in this context with an eye toward avoiding "'excessive judicial involvement in prison administration.") (quoting *Pratt v. Rowland*, 65 F.3d 803, 807) (9th Cir. 1995)). As such, an inmate cannot simply assert a generalized retaliatory animus but must allege facts that support the claim of retaliation. *White v. White*, 886 F. 2d 721, 724 (4th Cir. 1989). Moreover, a retaliation claim fails if there is a legitimate reason for the alleged retaliatory action. *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

In evaluating a causal relationship in a retaliation claim, the plaintiff must satisfy a prima facie burden to show that his protected activity was "a substantial or motivating factor" in the defendant's action. *Martin*, 977 F.3d at 299; *see Shaw*, 59 F.4th at 130-131. In the posture of this case, to meet the element of causation, the plaintiff must allege 1) that the defendant was aware of the protected activity and 2) "some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d at 501.

Roberts appears to assert three distinct acts of retaliation by Sires. First, he asserts that Sires retaliated against him for filing a grievance by confiscating his watch prior to the expiration of the grace period. ECF 4 at 6. Sires responds that Roberts was not singled out for this activity,

but that watches were collected from everyone on the housing unit on April 11, 2017, although a grace period had been given until April 14, 2017.  ECF 22-1 at 14.

Roberts does not provide different facts.  He states that Sires came to the unit to collect watches from those who were housed there, and to offer prisoners the alternative option of replacing them with plastic watches.  ECF 4 at 2, 3.  The facts do not indicate a causal relationship between the grievance Roberts filed (on an unspecified date) complaining of how this policy impacted him, to Sires collecting watches from all prisoners before the grace period expired.  Sires acted to enforce a policy against all prisoners, albeit three days before the alleged grace period had expired.  Nothing here indicates that Sires acted to retaliate against Roberts.

Second, Roberts asserts that Sires retaliated against him by issuing a false disciplinary ticket because he was "upset with" the agreement Roberts reached to have his watch stored pending a court decision.  ECF 4 at 3, 6.  Sires asserts that the ticket was written because Roberts refused to "sign any agreement to surrender his watch."  *Id.* at 3. The facts are not in dispute, and do not support Roberts's theory of retaliation. There is no casual relationship between the filing of a grievance and Roberts's receipt of a ticket for conduct involved in his refusal to surrender his watch. Further, to the extent that Roberts may be asserting that the agreement to have his watch stored pending a court decision is protected first amendment activity, he is incorrect.

Third, Roberts asserts that Sires retaliated against him by placing him in segregation because he challenged Sires's authority to confiscate and place a ban on his watch.  *Id.* at 6.  Sires responds by stating that Roberts was not engaged in first amendment activity when he refused to turn over his watch, which led to him being placed in segregation.  ECF 22-1 at 13. Again, the facts are not in dispute, and do not support Roberts's theory of retaliation.  There is no causal relationship between Roberts filing a grievance and being placed in segregation. The intervening

facts are that Roberts refused to turn over his watch, received a misbehavior report, and was then placed in segregation.

Roberts has put forth no argument to counter Sires's assertions. And, the record lacks any indication that Sires targeted Roberts when he was directed to turn over his watch, or when he was disciplined and placed in segregation for failure to do so. Accordingly, Sires is entitled to summary judgment with respect to Roberts's retaliation claim.

## VI.  Conclusion

For the foregoing reasons, I shall grant summary judgment in favor of defendants.[5]   An Order follows.

Date:  June 21, 2023                              _____/s/_____

Ellen L. Hollander
United States District Judge

---

[5]  As summary judgment is granted, I need not address the defense of qualified immunity.